COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Beales and Senior Judge Annunziata


KEISHA D. CARR

                                                            MEMORANDUM OPINION[*]
v.       Record No. 0351-10-4                                   PER CURIAM
                                                            AUGUST 10, 2010
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                             Charles J. Maxfield, Judge

            (Harold N. Ward, Jr.; The Ward Law Office, P.C., on brief), for
            appellant.

            (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
            County Attorney; Deborah C. Laird, Assistant County Attorney;
            Suzanne Gwen Hruby, Guardian *ad litem* for the minor children, on
            brief), for appellee.


        Keisha Carr (mother) appeals the trial court's order terminating her parental rights to her

two children and approving foster care plans with goals of adoption for the children.  Mother argues

that the trial court erred by (1) approving a foster care plan with a goal of adoption, as opposed to

return to parent/relative, for D.F.; (2) approving a foster care plan with a goal of adoption, as

opposed to return to parent/relative, for K.C.; (3) terminating her parental rights to D.F.; and

(4) terminating her parental rights to K.C.[1]  Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of

the trial court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We refer to the children by their initials.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

K.C. was born in January 2000, and D.F. was born in November 2000. From their birth until 2002, the children lived with their mother and their father, Davon Fields. They lived in shelters, hotels, and with friends of their parents. They were dirty, hungry, and left unattended for long periods of time.

Linda Saifi, the paternal grandmother, began to care for the children. In April 2003, the Fairfax County Juvenile and Domestic Relations District Court (the JDR court) found that the children were in need of services and temporarily transferred custody to the Fairfax County Department of Family Services (the Department).[2] In May 2003, the JDR court transferred custody of the children to Saifi. The Department provided protective supervision. Saifi and mother were ordered to cooperate with the Department, obtain psychological evaluations and parent-child assessments, and obtain a home study.

In December 2006, mother filed a motion for a home study. On May 21, 2007, the JDR court found that the children's placement with Saifi was unacceptable because Child Protective Services (CPS) was investigating Saifi. The JDR court transferred custody to mother with a thirty-day transition period. On June 5, 2007, the Department filed an emergency motion seeking to transfer the children's custody back to the Department. On June 7, 2007, the JDR court found that mother was homeless and Saifi was unable to care for the children. The JDR court transferred custody of the children to the Department. At the next hearing in August 2007,

---

[2] Fields was incarcerated when the children first came into foster care and died in July 2009.

- 2 -

the Department filed foster care plans with a goal of return home and a concurrent goal of placement with relatives. Mother and Saifi were ordered to obtain psychological evaluations, parent capacity evaluations, and alcohol and drug services evaluations. They also were ordered to follow any treatment recommendations and cooperate with the Department.

Several review hearings were conducted over the next year and a half until the Department filed petitions to terminate parental rights and submitted foster care plans with goals of adoption. On October 1, 2009, the JDR court terminated mother's parental rights and approved the foster care plans with the goals of adoption. Mother and Saifi appealed to the trial court.

On January 26, 2010, after a two-day trial, the trial court terminated mother's parental rights and approved the foster care plans with the goals of adoption. The trial court found that Saifi was not a viable relative placement for the children. Mother timely noted her appeal.[3]

ANALYSIS

Issues 1 and 2 – Goals of foster care plans

Mother argues that the trial court erred in approving the foster care plans with goals of adoption, as opposed to goals of return home or relative placement. Mother contends the trial court should have considered the homes of the paternal grandmother and maternal grandmother, both of whom indicated that they would be willing to care for the children.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

---

[3] Saifi also appealed the trial court's ruling. See Saifi v. Fairfax Cnty. Dep't of Family Servs., No. 0736-10-4 (Va. Ct. App. Aug. 10, 2010).

- 3 -

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The Department spoke with numerous relatives regarding placement of the children. The maternal grandmother, Denise Carr (Carr), indicated that she would be interested in having custody of the children, but she never filed petitions for custody. The Department met with Carr and her live-in boyfriend and explained the process. The Department was concerned about Carr's boyfriend and required that he complete a psychosexual risk assessment in addition to the evaluations that the Department usually requires.[4] Carr and her boyfriend did not follow through with the Department's requests. A home study was conducted on Carr's home in Maryland, where mother was living. The home study concluded that Carr's home was not an appropriate placement.

Furthermore, Carr testified at trial about her interest in helping mother raise the children. She testified that they could live with her. She also testified that she did not know that the children had special needs and that she had not seen them since 2007.

The trial court received sufficient evidence to evaluate Carr as a possible placement for the children. See Hawthorne v. Smyth Cnty Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (although the Department did not investigate a relative, the relative testified at trial, so "the trial court was presented with evidence for its consideration as to the

---

[4] Mother alleged that he made inappropriate sexual advances toward her at one time.

- 4 -

suitability" of placing the child with a relative before it ordered termination of the parent's rights).

The trial court also received evidence regarding Saifi as a possible placement for the children. Saifi's home was not a suitable placement for the children. The children had lived with Saifi for years, but had to be removed from her home because it was dirty and cluttered. Saifi struggled with hoarding. Her home had not passed inspection, and she faced eviction on several occasions.[5]

In addition, Saifi had a history of violence. CPS had investigated her home on several occasions. Her own children had been placed in foster care. Saifi was charged with voluntary manslaughter after stabbing her husband to death. In June 2007, D.F. broke her arm when Saifi grabbed and pulled her.

Saifi also had physical disabilities and could not keep up with the children. The children have special needs, and Saifi could not provide them with the structure and consistency that they needed.

The trial court found that Saifi was not going to be able to meet the children's needs. The trial court stated, "I think the [children's] needs are going to get much greater shortly, and her [Saifi's] ability to take care of the children to date has been marginal at best."

The Department also investigated other relatives, including Saifi's sister and two other great aunts. None of them was interested in custody of the children.

Contrary to mother's argument, the Department presented evidence of its investigation of the children's relatives. The trial court considered placement with relatives, especially Saifi, but found that it was in the children's best interests not to be placed with relatives. The trial court did not err in approving the foster care plans with the goals of adoption.

---

[5] By the time of the trial, Saifi's home passed inspection.

<u>Issues 3 and 4 – Termination of parental rights</u>

Mother argues that the trial court erred in terminating her parental rights to K.C. and D.F. She contends (1) she remedied the conditions which required the continuation of foster care, (2) the Department failed to prove that termination was in the children's best interests, and (3) the Department failed to prove that it provided appropriate services to mother.

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

<u>Toms v. Hanover Dep't of Soc. Servs.</u>, 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting <u>City of Newport News Dep't of Soc. Servs. v. Winslow</u>, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Mother had a history of being unable to maintain stable housing. When the children were born and in her care, mother was living in shelters, hotels, and friends' homes. Over the years, she had been evicted from several apartments for failure to pay rent. At the time of the trial, mother testified that she now had housing for the children because she was living with her

mother and her mother's boyfriend. However, when a home study was conducted at her mother's home, the home was found unsuitable. Mother testified that she would need another month or two to obtain housing of her own.

Mother also failed to maintain stable employment while the children were in foster care. She testified that she quit a full time job at Advance Auto Parts so that she could spend more time with her children. However, the frequency of her visits did not increase. She said that she had a part-time job at Food Lion, but did not provide proof of employment to the Department. Therefore, at the time of the hearing, mother still did not have stable housing and had not provided proof of stable employment.

While the children were in foster care, mother failed to attend all of the scheduled visitations with her children and their therapists. She lived in Maryland, and the children lived in Virginia. The Department spoke with mother's employer and arranged a day off for her so that she could visit with her children, but mother continued to miss visits, which upset the children. Mother told the Department that she had unreliable transportation. The Department offered to pick up mother from a metro station in Virginia and transport her to the children. The Department also offered to give her gas cards. One of the children's therapists sent $50 to mother so that she could visit with the children. Despite the Department's efforts, mother consistently missed visitations. The Department even offered to help mother move to Virginia and help pay for moving expenses, but she refused the offer.

The Department made additional efforts to assist mother, but to no avail. The Department suggested that mother write letters to the children, but mother did not do so. The Department required mother to participate in evaluations. Mother took eleven months to complete a three-month alcohol and drug service program. Although mother completed the psychological evaluation and the parent-child evaluation, she frequently cancelled appointments

and the Department had to reschedule appointments. Mother did not follow up with the recommended individual therapy or parenting classes.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). Here, the evidence proved that the Department made reasonable and appropriate efforts to provide services to mother.

Furthermore, the trial court did not err in terminating mother's parental rights. Mother did not recognize her own limitations and refused to acknowledge that the children had special needs. When the children were very young, she gave them to Saifi. The trial court stated that mother "passed [her] responsibility on to the children's grandmother." The trial court explained:

> And the law is pretty clear that if you want to do that, when she [Saifi] made the mistake she made, you have got twelve months to do it, and here we are at thirty months and you are in here today saying, I am close to an apartment.
>
> This is just not good enough for these children.

Mother had been unable to meet these children's needs since they were born. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

At the time of the trial, the children were in foster care for approximately thirty months. They were doing well and receiving the necessary services.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not err in terminating mother's parental rights to K.C. and D.F.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.